# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

**CRYSTAL FRYE,** :

    **Plaintiff** : CIVIL ACTION NO. 3:16-1482

    v. : JUDGE MANNION

**NANCY A. BERRYHILL,** :

    **Defendant** :

## MEMORANDUM

Pending before the court is the report of Magistrate Judge Karoline Mehalchick which recommends that the decision of the Commissioner of Social Security, ("Commissioner"), be vacated and the matter remanded for further consideration. (Doc. 22). The defendant has filed objections to the report. (Doc. 23). Based upon the court's review of the record in this case, the report of Judge Mehalchick will be adopted in its entirety.

By way of relevant background, on July 19, 2013, the plaintiff filed Title II and Title XVI applications with the Social Security Administration, ("Administration"), seeking a period of disability, Disability Insurance Benefits, ("DIB"), and supplemental security income, ("SSI"), for disability beginning July 31, 2011. (Doc. 1, ¶5). The plaintiff's applications for DIB and SSI were denied by the Administration on October 25, 2013. (Doc. 1,

1

¶6). On December 6, 2013, the plaintiff requested a hearing before an Administrative Law Judge, ("ALJ"). (Doc. 1, ¶7). At the hearing set in July 2014, the plaintiff amended her onset date to September 16, 2012. (Doc. 9-2, p. 11). The plaintiff's hearing was continued to February 17, 2015. (Doc. 1, ¶7). On July 21, 2015, the ALJ issued a decision finding that the plaintiff was not disabled within the meaning of the Social Security Act, ("Act"). (Doc. 9-2, p. 26). The plaintiff appealed the decision of the ALJ to the Social Security Administration Appeals Council, ("Appeals Council"), which denied her appeal on June 24, 2016. (Doc. 1, ¶ 9).

On July 19, 2016, the plaintiff filed the instant action in which she argues that she has been disabled since September 16, 2012; she has not engaged in any substantial gainful activity since that date; and that the decision of the ALJ is not supported by substantial. (Doc. 1, ¶¶11-13). The plaintiff requests that the court either reverse the decision of the ALJ and award benefits or, in the alternative, remand the matter for a new hearing. (Doc. 1, ¶14). The Commissioner filed an answer to the plaintiff's complaint with necessary transcripts on September 21, 2016. (Doc. 8, Doc. 9).

The plaintiff's brief in support of her appeal was filed on December 5, 2016. (Doc. 13). On January 3, 2017, the defendant's brief followed. (Doc. 15). The plaintiff filed a reply brief on January 27, 2017, (Doc. 18).

On August 18, 2017, Judge Mehalchick issued the instant report in which she recommends that the decision of the Commissioner be vacated and the case be remanded to the Commissioner to conduct a new administrative hearing and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. §405(g). (Doc. 22). The Commissioner filed objections to Judge Mehalchick's report on August 31, 2017. (Doc. 23).

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy

itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

In her objections, the Commissioner provides that Judge Mehalchick recommended that this matter be remanded to the agency for further consideration of the medical opinion of Dr. Harvey Shapiro. The Commissioner argues that the ALJ's evaluation of Dr. Shapiro's opinion was proper under the applicable regulations and Third Circuit precedent and, therefore, remand is improper. The Commissioner requests that the court decline to adopt Judge Mehalchick's report and deny the plaintiff's appeal.

In her appeal, the plaintiff raised five arguments for consideration by the court. Judge Mehalchick focused on the second which contended that the ALJ improperly weighed the medical opinion of her treating physician,

4

Dr. Harvey Shapiro. In addressing the plaintiff's argument and the Commissioner's response thereto, Judge Mehalchick provided the following discussion:

> The ALJ also considered the medical opinion proffered by treating physician Dr. Harvey Shapiro. (Doc. 9-2, at 22). Frye first saw Dr. Shapiro on August 14, 2013. (Doc. 9-14, at 55; Doc. 9-21, at 27). At this initial visit, Dr. Shapiro observed that Frye presented with a depressed mood and reported panic attacks occurring four times per week with each lasting thirty minutes. (Doc. 9-14, at 57). Frye reported symptoms of depression and anxiety including self-castigation, anhedonia, hopelessness, hypomanic episodes, social phobia preventing her from going to crowded places, senseless and constant worries, frequently checking to see if anyone is outside of her home, and hearing voices/seeing dark shadows. (Doc. 9-14, at 57-58). Dr. Shapiro conducted a psychiatric evaluation and diagnosed Frye with cyclothymic disorder, panic disorder, GAD, OCD, ADHD, social phobia, dissociative disorder with probable elements of DID, PTSD, migraines, hypertension, and diabetes. (Doc. 9-14, at 58). Dr. Shapiro opined that Frye "obviously has a very heavy burden of mood disorder spectrum illnesses. Clearly a strong antidepressant is needed . . . [e]ven harder may be to deal with the PTSD and probably dissociative disorder (which probably has elements of DID). There is little medicinally to be done for that, but an alpha agonist is possible." (Doc. 9-14, at 58). Dr. Shapiro prescribed three medications, Celexa, Imitrex, and Effexor, with Effexor dosage to be increased progressively from 37.5 mg to 150 mg. (Doc. 9-14, at 58-59). At the first follow-up on September 10, 2013, Dr. Shapiro noted Frye's mood as depressed, with flat affect, diagnosing bipolar disorder with continuing symptoms. (Doc. 9-14, at 60-61). Dr. Shapiro noted that Effexor helped Frye's mental energy, but had no effect on her feelings of panic, GAD, social phobia, and OCD. (Doc. 9-14, at 61). He increased her dosage of Effexor and began Xanax. (Doc. 9-14, at 61).

5

On July 1, 2014, Dr. Shapiro conducted a mental impairment questionnaire. (Doc. 9-21, at 21-32). In a symptomatic check-box portion of the worksheet, Dr. Shapiro identified Frye's symptoms as anhedonia, appetite disturbances, decreased energy, thoughts of suicide, blunt, flat or inappropriate affect, feelings of guilt or worthlessness, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, recurrent and intrusive recollections of a traumatic experience, psychomotor agitation or retardation, persistent disturbances of mood or affect, apprehensive expectation, recurrent obsessions or compulsions, emotional withdrawal, bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes, perceptual or thinking disturbances, hyperactivity, emotional lability, flight of ideas, manic syndrome (hypomanic), pressures of speech, easy distractibility, memory impairment (dissociative), sleep disturbance, and recurrent severe panic attacks. (Doc. 9-21, at 22).

In a check-box evaluation of Frye's ability to do work-related activities on a day-to-day basis in a regular work setting for unskilled positions, Dr. Shapiro opined Frye would be seriously limited but not precluded in: remembering work-like procedures; sustaining an ordinary routine without special supervision; and performing at a consistent pace without an unreasonable number and length of rest periods. (Doc. 9-21, at 23). He further opined Frye would be unable to meet competitive standards in working in coordination with or proximity to others without being unduly distracted, and Frye would have no useful ability to function in maintaining attention for two hour segments or completing a normal workday and workweek without interruption from psychologically based symptoms. (Doc. 9-21, at 23). In separate boxes considering semi-skilled and skilled work, or particular types of jobs, Dr. Shapiro found Frye would be unable to understand and remember detailed instructions, carry out instructions, deal with the stress of semi-skilled and skilled work, and interact appropriately with the general public. (Doc. 9-21, at 24). Dr. Shapiro summarized Frye's mental functional limitations as moderate restriction in activities of daily living, extreme

difficulties in maintaining social functioning, extreme difficulties in maintaining concentration, persistence, or pace, and four or more episodes of decompensation within a 12 month period, each of at least two weeks in duration. (Doc. 9-21, at 25).

Dr. Shapiro attached a six-page narrative summary to his evaluation. (Doc. 9-21, at 27-32). He stated that he had seen Frye every 2-4 weeks since the beginning of their treatment relationship, reiterating the same diagnoses as found in his treatment history. (Doc. 9-21, at 27). He stated his treatment had consisted of medication and psychotherapy, with response "meagre and limited." (Doc. 9-21, at 27). Dr. Shapiro found Frye's prognosis "poor," noting that while psychiatric medication had provided some response, the response was disappointing in light of Frye's Effexor prescription being the "very top dose" of "the most powerful of the modern antidepressants." (Doc. 9-21, at 29). Dr. Shapiro expanded on each of his findings on Frye's limitations, and severely criticized the opinion of Dr. Digamber. (Doc. 9-21, at 31).

The ALJ notes that he considered the opinions of Dr. Shapiro, however affording them little weight. (Doc. 9-2, at 23). The ALJ described Dr. Shapiro's form as "conclusory" and with "very little explanation of the evidence relied upon in forming" the opinion. (Doc. 9-2, at 23). The ALJ then cited Dr. Shapiro's medication management notes, focusing on notations of Frye's mood and affect being generally within normal limits. (Doc. 9-2, at 23; Doc. 9-21, at 19-20; Doc. 9-22, at 8-10).[1] The ALJ also found Dr. Shapiro's treatment notes inconsistent with his findings on Frye's functional limitations, further describing Frye's treatment as "routine and conservative" and belied by her activities of daily living. (Doc. 9-2, at 23). The ALJ then discredited Dr. Shapiro's criticism of Dr. Digamber, as Dr. Digamber's findings on Frye's physical limitations were outside the scope of treatment provided by Dr. Shapiro. (Doc. 9-2, at 23). Finding Dr. Shapiro's opinion unsupported by objective evidence, the ALJ afforded little weight to the opinion.

---

[1] Footnote omitted.

The Court finds that the ALJ's decision to afford little weight to Dr. Shapiro to be improper given the explanation provided. Even where not entitled to controlling weight, the opinion of a treating source is generally afforded greater weight, barring "good reasons" for affording reduced weight upon consideration of the factors noted in § 404.1527. Many of these factors weigh in favor of granting weight to the opinion of Dr. Shapiro, including the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, consistency, and specialization. Dr. Shapiro was uniquely positioned to posit on Frye's mental limitations given the scope, duration, and frequency of his treatment leading to his assessment. In affording reduced weight to Dr. Shapiro's opinion, the ALJ cited a routine and conservative treatment history of Frye, a lack of objective medical evidence supporting the severity of her mental limitations, Frye's activities of daily living, and Dr. Shapiro's opinions on restrictions outside the scope of his expertise and treatment relationship. (Doc. 9-2, at 23).

Mental impairments such as depression and anxiety, both diagnosed in Frye, may manifest in symptoms difficult to quantify through objective medical evidence. A lack of objective medical evidence is by itself insufficient to discredit claimant. SSR 96-7p. As noted by other courts in the Third Circuit, impairments such as depression and anxiety "while medically determinable, are difficult to substantiate by objective medical evidence." *Volage v. Astrue*, No. 11-CV-4413, 2012 WL 4742373, at *7 (D.N.J. Oct. 1, 2012). "[T]he reports of treating physicians, as well as the testimony of the claimant, become even more important in the calculus for making a disability determination" in circumstances involving impairments for which objective medical testing may not demonstrate the existence or severity of an impairment. *See Perl v. Barnhart*, No. 03-4580, 2005 WL 579879, at *3 (E.D. Pa. March 10, 2005) (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2002)). Thus, credibility becomes paramount in making the disability determination without objective medical evidence to refute the findings of a treating source. The treatment history, supportability of observations, and Frye's activities of daily

living--the other three sources cited for discounting Dr. Shapiro's opinion--each evoke credibility considerations.

Observation of routine and conservative treatment alone is insufficient to discredit the severity and disabling effect of impairments identified by a claimant seeking disability. *See Sykes v. Apfel,* 228, F.3d 259, 266 n. 9 (3d Cir. 2000). At various times, Frye was prescribed between 17 and 21 medications to treat mental and physical symptoms. Dr. Shapiro treated Frye with the highest dosage of Effexor--a drug he deemed the strongest available at treating her symptoms--noting only limited benefit and thus restrictions mostly unresponsive to medicinal intervention. (Doc. 9-21, at 29). Dr. Shapiro noted that medication has little to no effect on some of Frye's most concerning impairments such as dissociative disorder, which is only treatable through therapy. (Doc. 9-21, at 28). An updated treatment plan signed by Dr. Shapiro on October 8, 2014 indicated increased psychiatric evaluation and therapy sessions. (Doc. 9-22, at 3-6). The ALJ did not rely solely on routine and conservative treatment to discount Dr. Shapiro's opinion, however the preceding makes consideration of the other bases for discounting a treating source's opinion even more important.

In judging the credibility of this opinion and of Frye's subjective complaints generally, the ALJ identified neutral mood and affect observed in the course of Dr. Shapiro's treatment history, and only mild restrictions in activities of daily living. However, Dr. Shapiro is not the only physician to observe consistently depressed mood and altered affect. Treatment notes from Spectrum Health and Wellness following Dr. Shapiro's move to Florida repeatedly note Frye's exhibited depression and either flat or blunted effect at her appointments. (Doc. 9-26, at 16, 27-29). These notes, which do not appear to be referenced in the ALJ's opinion, also corroborate some of Dr. Shapiro's on the effects of Frye's mental impairments including feelings of guilt, anxiety, and auditory hallucinations. (Doc. 9-26, at 16, 27-29). While Dr. Shapiro's notes indicate some level of stability, they are not inherently inconsistent with his opinion. Moreover, no medical source refutes Dr. Shapiro's mental diagnoses.

> The ALJ relied on Frye's activities of daily living throughout his opinion, having determined she had only mild restrictions as a result of mental impairments. (Doc. 9-2, at 15). The ALJ noted that Frye provided herself personal care, prepared meals, performed household chores, launders and irons clothing, and cleans dishes and the house for a couple of hours day.[2] (Doc. 9-2, at 15-16). However, the ALJ's findings make no mention of the comparability of these activities to being able to perform full-time work on a regular and consistent basis, eight hours a day, five days a week as contemplated by the Regulations. See SSR-96-8p. The ALJ's restriction of Frye to routine and repetitive work appears to comport with his findings. However, given the opinion of treating source Dr. Shapiro on Frye's limitations, the restrictions found may not be attainable.

(Doc. 22, pp. 11-17).

Upon review of the Commissioner's objections to the report of Judge Mehalchick, the Commissioner raises nothing regarding the evaluation of Dr. Shapiro's treating physician opinion that was not raised in her brief opposing the plaintiff's appeal. Upon review of the Commissioner's arguments and the reasoning provided in Judge Mehalchick's report for remand, the court finds that Judge Mehalchick has addressed the concerns of the Commissioner to the court's satisfaction

---

[2] Here, Judge Mehalchick noted that "[a]t her second disability hearing conducted July 31, 2014, Frye stated that she did not cook for herself, do laundry, and performed household chores only once a week. (Doc. 902, at 68). Further, she testified that she does not go shopping, go to church, or to restaurants. (Doc. 9-2, at 69-70). Previously, Frye indicated that she performed daily activities in accordance with the findings of the ALJ. (Doc. 7, at 21-22)."

10

and the court adopts the reasoning of Judge Mehalchick as its own. The court also agrees that remand of the matter is appropriate to further evaluate the medical opinion evidence. As such, the court will overrule the objections of the Commissioner and adopt the report of Judge Mehalchick in its entirety. An appropriate order shall issue.

*s/Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: October 3, 2017**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-1482-01.docx